**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION**

ANGEL LUIS NIEVES, SR.,

        Plaintiff,

vs.                                                    Case No. 3:17-cv-940-J-JRK

NANCY A. BERRYHILL,
Deputy Commissioner for Operations
of the Social Security Administration,
performing the duties and functions not
reserved to the Commissioner of
Social Security,

        Defendant.
_____/

## OPINION AND ORDER[1]

### I. Status

Angel Luis Nieves, Sr. ("Plaintiff") is appealing the Commissioner of the Social Security Administration's final decision denying his claim for disability insurance benefits ("DIB"). Plaintiff's alleged inability to work is a result of "type two diabetes," "diabetes," "back pain," "vision trouble," and "fatty liver." Transcript of Administrative Proceedings (Doc. No. 11; "Tr." or "administrative transcript"), filed November 13, 2017, at 76, 85 (some capitalization omitted); see also Tr. at 185. On June 18, 2013, Plaintiff filed an application for DIB, alleging an onset disability date of June 17, 2013.[2] Tr. at 157-58. Plaintiff's

---

[1] The parties consented to the exercise of jurisdiction by a United States Magistrate Judge. See Notice, Consent, and Reference of a Civil Action to a Magistrate Judge (Doc. No. 12), filed November 13, 2017; Reference Order (Doc. No. 13), entered November 14, 2017.

[2] Although actually completed on June 18, 2013, the protective filing date of Plaintiff's application is listed elsewhere in the administrative transcript as June 17, 2013. See, e.g., Tr. at 76, 85, 175.

application was denied initially, see Tr. at 75, 76-83, 94, 95-97, and was denied upon reconsideration, see Tr. at 84, 85-93, 100, 101-05.

On August 5, 2015, an Administrative Law Judge ("ALJ") held a hearing, during which the ALJ heard testimony from Plaintiff, who was represented by counsel, and a vocational expert ("VE"). Tr. at 36-74. At the time of the hearing, Plaintiff was fifty (50) years old. Tr. at 40. The ALJ issued a Decision on August 27, 2015, finding Plaintiff not disabled through the date of the Decision. Tr. at 8-19. Plaintiff sought review of the ALJ's Decision by the Appeals Council. Tr. at 32-33. On January 23, 2017, the Appeals Council denied Plaintiff's request for review, Tr. at 1-3, thereby making the ALJ's Decision the final decision of the Commissioner. Plaintiff then sought and received additional time to file a civil action challenging the Commissioner's final decision. Tr. at 25, 29. On August 16, 2017, Plaintiff commenced this action under 42 U.S.C. § 405(g) by timely filing a Complaint (Doc. No. 1), seeking judicial review of the Commissioner's final decision.

Plaintiff raises six issues on appeal, whether the ALJ erred in: 1) assigning great weight to the opinion of a non-examining state agency medical consultant but then failing to incorporate all of the consultant's stated limitations in the residual functional capacity ("RFC"); 2) determining in the RFC that Plaintiff would need position changes every thirty minutes but failing to specify the maximum number of changes and whether Plaintiff would be off task during them; 3) assigning great weight to a Global Assessment of Functioning ("GAF") score of fifty (50) but not reflecting symptoms associated with it in the RFC; 4) finding that Plaintiff can perform jobs in the national economy that require the ability to do more than was permitted in Plaintiff's RFC; 5) discounting the opinion of a treating physician

without providing the requisite good cause; and 6) improperly evading the grid rules by finding that Plaintiff can perform light work rather than sedentary work. Plaintiff's Memorandum in Opposition to the Commissioner's Decision (Doc. No. 19; "Pl.'s Mem."), filed January 31, 2018, at 1-2; see id. at 10-23. On May 2, 2018, Defendant filed a Memorandum in Support of the Commissioner's Decision (Doc. No. 22; "Def.'s Mem.").

Addressing Plaintiff's first and fifth issues relating to Plaintiff's physical impairments, the undersigned determines that the Commissioner's final decision is due to be reversed and remanded for further consideration and proceedings. Given that further consideration on remand may have an impact on the factual findings at which the second, fourth, and sixth issues are aimed, those issues are not substantively addressed herein. See Jackson v. Bowen, 801 F.2d 1291, 1294 n.2 (11th Cir. 1986) (per curiam) (declining to address certain issues because they were likely to be reconsidered on remand); Demenech v. Sec'y of the Dep't of Health & Human Servs., 913 F.2d 882, 884 (11th Cir. 1990) (per curiam) (concluding that certain arguments need not be addressed when the case would be remanded on other issues). The undersigned also addresses the sole issue related to Plaintiff's mental impairment, issue three, and finds no error in that respect.

## II. The ALJ's Decision

When determining whether an individual is disabled,[3] an ALJ must follow the five-step sequential inquiry set forth in the Code of Federal Regulations ("Regulations"), determining

---

[3] "Disability" is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

as appropriate whether the claimant (1) is currently employed or engaging in substantial gainful activity; (2) has a severe impairment; (3) has an impairment or combination of impairments that meets or medically equals one listed in the Regulations; (4) can perform past relevant work; and (5) retains the ability to perform any work in the national economy. 20 C.F.R. §§ 404.1520, 416.920; see also Phillips v. Barnhart, 357 F.3d 1232, 1237 (11th Cir. 2004). The claimant bears the burden of persuasion through step four and, at step five, the burden shifts to the Commissioner. Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987).

Here, the ALJ followed the five-step sequential inquiry. See Tr. at 10-18. At step one, the ALJ determined that Plaintiff "has not engaged in substantial gainful activity since June 17, 2013, the alleged onset date." Tr. at 10 (emphasis and citation omitted). At step two, the ALJ found that Plaintiff "has the following severe impairments: lumbar disc disease, diabetes mellitus, obesity, hepatitis, hypertension, and depressive disorder." Tr. at 10 (emphasis and citation omitted). At step three, the ALJ ascertained that "[Plaintiff] does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." Tr. at 11 (emphasis and citation omitted).

The ALJ determined that Plaintiff has the following RFC:

[Plaintiff can] perform light work as defined in 20 CFR [§] 404.1567(b) with limitations. Specifically, [Plaintiff] requires the opportunity to alternate positions between sitting and standing at least every 30 minutes while remaining at his workstation. Each positional change would last for no more than three minutes; and [Plaintiff] can sit, stand, or walk for up to six hours during an eight-hour workday. In addition, [Plaintiff] can push or pull up to 20 pounds occasionally and 10 pounds frequently; he can occasionally use foot controls; and he can occasionally climb ramps or stairs. However, [Plaintiff] can never climb ladders or scaffolds; and he is limited to frequent balancing, stooping, or crouching. [Plaintiff] also can only occasionally kneel, and he must never crawl at work.

> Furthermore, [Plaintiff] must avoid work around unprotected heights and moving mechanical parts, and he must avoid work in environments with extreme temperatures. [Plaintiff] is further limited to performing only simple tasks with simple work-related decisions and no more than occasional interaction with coworkers, supervisors, and the public. [Plaintiff's] time off task will be accommodated with normal breaks.

Tr. at 12-13 (emphasis omitted). At step four, the ALJ found that Plaintiff "is unable to perform any past relevant work" as a "paint salesperson" and an "automobile mechanic." Tr. at 17 (some capitalization, emphasis and citation omitted). At step five, the ALJ considered Plaintiff's age ("47 years old . . . on the alleged disability onset date"), education ("a least a high school education and is able to communicate in English"), work experience, and RFC, and relied on the testimony of the VE to find Plaintiff is capable of performing work that "exist[s] in significant numbers in the national economy." Tr. at 17 (emphasis and citations omitted). Namely, the ALJ identified representative jobs of "marker," "housekeeping cleaner," and "routing clerk." Tr. at 18 (some capitalization omitted). The ALJ concluded that Plaintiff "has not been under a disability . . . from June 17, 2013, through the date of th[e D]ecision." Tr. at 18 (emphasis and citation omitted).

### III. Standard of Review

This Court reviews the Commissioner's final decision as to disability pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). Although no deference is given to the ALJ's conclusions of law, findings of fact "are conclusive if . . . supported by 'substantial evidence' . . . ." Doughty v. Apfel, 245 F.3d 1274, 1278 (11th Cir. 2001) (citing Falge v. Apfel, 150 F.3d 1320, 1322 (11th Cir. 1998)). "Substantial evidence is something 'more than a mere scintilla, but less than a preponderance.'" Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987)). The substantial evidence standard

is met when there is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Falge, 150 F.3d at 1322 (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)).  It is not for this Court to reweigh the evidence; rather, the entire record is reviewed to determine whether "the decision reached is reasonable and supported by substantial evidence."  Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991) (internal quotation and citations omitted); see also McRoberts v. Bowen, 841 F.2d 1077, 1080 (11th Cir. 1988); Walker v. Bowen, 826 F.2d 996, 999 (11th Cir. 1987).  The decision reached by the Commissioner must be affirmed if it is supported by substantial evidence–even if the evidence preponderates against the Commissioner's findings. Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1158-59 (11th Cir. 2004) (per curiam).

## IV. Discussion

The issues to be addressed are whether the ALJ erred in assigning great weight to the opinion of Loc Kim Le, M.D., a non-examining state agency medical consultant, but then failing to incorporate all of Dr. Le's physical limitations in the RFC (Plaintiff's issue one); whether the ALJ erred in failing to provide the requisite good cause to discount the opinion of Ramesh A. Patel, M.D., Plaintiff's treating physician, regarding Plaintiff's physical limitations (Plaintiff's issue five); and whether the ALJ erred in assigning great weight to a GAF score of fifty (50) but not reflecting serious mental symptoms or impairment in the RFC (Plaintiff's issue three).  See Pl.'s Mem. at 1-2.  The undersigned addresses the medical opinions regarding the physical limitations together (Plaintiff's issues one and five).  Then, the issue regarding the GAF score and mental symptoms is addressed separately (Plaintiff's issue three).

## A. Medical Opinions Regarding Physical Limitations

The Regulations[4] establish a "hierarchy" among medical opinions[5] that provides a framework for determining the weight afforded each medical opinion: "[g]enerally, the opinions of examining physicians are given more weight than those of non-examining physicians[;] treating physicians[' opinions] are given more weight than [non-treating physicians;] and the opinions of specialists are given more weight on issues within the area of expertise than those of non-specialists." McNamee v. Soc. Sec. Admin., 164 F. App'x 919, 923 (11th Cir. 2006) (citing 20 C.F.R. § 404.1527(d)(1), (2), (5)). The following factors are relevant in determining the weight to be given to a physician's opinion: (1) the "[l]ength of the treatment relationship and the frequency of examination"; (2) the "[n]ature and extent of [any] treatment relationship"; (3) "[s]upportability"; (4) "[c]onsistency" with other medical evidence in the record; and (5) "[s]pecialization." 20 C.F.R. §§ 404.1527(d)(2)-(5), 416.927(d)(2)-(5); see also 20 C.F.R. §§ 404.1527(e), 416.927(f).

---

[4] On January 18, 2017, the SSA revised the rules regarding the evaluation of medical evidence and symptoms for claims filed on or after March 27, 2017. See Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844-01, 5844 (January 18, 2017). Because Plaintiff filed his claim before that date, the undersigned cites the rules and Regulations that were in effect on the date of the ALJ's Decision, unless otherwise noted.

[5] "Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [a claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions." 20 C.F.R. § 404.1527(a)(2); see also 20 C.F.R. § 404.1513(a) (defining "[a]cceptable medical sources").

With regard to a treating physician or psychiatrist,[6] the Regulations instruct ALJs how to properly weigh such a medical opinion. See 20 C.F.R. § 404.1527(c). Because treating physicians "are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [a claimant's] medical impairment(s)," a treating physician's or psychiatrist's medical opinion is to be afforded controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record. Id. When a treating physician's or psychiatrist's medical opinion is not due controlling weight, the ALJ must determine the appropriate weight it should be given by considering the factors identified above (the length of treatment, the frequency of examination, the nature and extent of the treatment relationship, as well as the supportability of the opinion, its consistency with the other evidence, and the specialization of the physician). Id.

If an ALJ concludes the medical opinion of a treating physician or psychiatrist should be given less than substantial or considerable weight, he or she must clearly articulate reasons showing "good cause" for discounting it. Hargress v. Soc. Sec. Admin., Comm'r, 883 F.3d 1302, 1305 (11th Cir. 2018) (citation omitted); Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997). Good cause exists when (1) the opinion is not bolstered by the evidence; (2) the evidence supports a contrary finding; or (3) the opinion is conclusory or inconsistent with the treating physician's or psychiatrist's own medical records. Hargress, 883 F.3d at 1305 (citation omitted); Phillips, 357 F.3d at 1240-41; see also Edwards v.

---

[6] A treating physician or psychiatrist is a physician or psychiatrist who provides medical treatment or evaluation to the claimant and who has, or has had, an ongoing treatment relationship with the claimant, as established by medical evidence showing that the claimant sees or has seen the physician with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for the medical condition. See 20 C.F.R. § 404.1502.

Sullivan, 937 F.2d 580, 583-84 (11th Cir. 1991); Schnorr v. Bowen, 816 F.2d 578, 582 (11th Cir. 1987) (stating that a treating physician's medical opinion may be discounted when it is not accompanied by objective medical evidence).

An examining physician's opinion, on the other hand, is not entitled to deference. See McSwain v. Bowen, 814 F.2d 617, 619 (11th Cir. 1987) (per curiam) (citing Gibson v. Heckler, 779 F.2d 619, 623 (11th Cir. 1986)); see also Crawford, 363 F.3d at 1160 (citation omitted). Moreover, the opinions of non-examining physicians, taken alone, do not constitute substantial evidence. Broughton v. Heckler, 776 F.2d 960, 962 (11th Cir. 1985) (citing Spencer v. Heckler, 765 F.2d 1090, 1094 (11th Cir. 1985)). However, an ALJ may rely on a non-examining physician's opinion that is consistent with the evidence, while at the same time rejecting the opinion of "any physician" whose opinion is inconsistent with the evidence. Oldham v. Schweiker, 660 F.2d 1078, 1084 (5th Cir. Unit B. 1981) (citation omitted).

An ALJ is required to consider every medical opinion. See 20 C.F.R. §§ 404.1527(d), 416.927(d) (stating that "[r]egardless of its source, we will evaluate every medical opinion we receive"). While "the ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion," Oldham, 660 F.2d at 1084 (citation omitted); see also 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2), "the ALJ must state with particularity the weight given to different medical opinions and the reasons therefor," Winschel v. Comm'r of Soc. Sec., 631 F.3d 1176, 1179 (11th Cir. 2011) (citing Sharfarz v. Bowen, 825 F.2d 278, 279 (11th Cir.1987)); Moore v. Barnhart, 405 F.3d 1208, 1212 (11th Cir. 2005); Lewis, 125 F.3d at 1440.

### 1. Dr. Le (non-examining state agency medical consultant)

With respect to Dr. Le, the state agency medical consultant, the ALJ stated that the opinion was given "great weight."[7]  Tr. at 15.  The ALJ noted that the physical restrictions assigned by Dr. Le were "incorporated . . . into the [RFC]," along with an additional restriction of alternating positions.  Tr. at 15.  Yet, it is undisputed that the ALJ's RFC permitted Plaintiff to "sit, stand, or walk for up to six hours during an eight-hour workday," Tr. at 12, although Dr. Le opined Plaintiff could "stand and/or walk (with normal breaks) for a total of [] 4 hours," and "sit (with normal breaks) for a total of [] about six hours," Tr. at 89 (some capitalization and emphasis omitted).  Further, it is undisputed that the ALJ's RFC permitted Plaintiff to stoop frequently, Tr. at 12, although Dr. Le opined Plaintiff could stoop only occasionally, Tr. at 90.[8]

Plaintiff argues the ALJ's failure to incorporate these limitations even after the ALJ assigned Dr. Le's opinion great weight constitutes reversible error.  Pl.'s Mem. at 10-12.  As noted, Defendant does not dispute that the ALJ's RFC does not have the same restrictions as Dr. Le, but Defendant argues that "Plaintiff has not cited any authority establishing that the ALJ is required to adopt an opinion verbatim every time he gives an opinion great weight."  Def.'s Mem. at 5.  Defendant simply states that with the restrictions that are set forth in the RFC, "Plaintiff has not shown that she [sic] is more limited than the ALJ found."  Id. at 6.

---

[7]  The ALJ did not refer to Dr. Le by name, instead citing to "Exhibit 4A at pp. 5-8," Tr. at 15, which contains Dr. Le's opinion, see Tr. at 88-93.

[8]  There are other discrepancies between Dr. Le's opinion and the RFC, but Plaintiff does not raise them so they are not discussed.

The ALJ's assignment of great weight to Dr. Le's opinion and erroneous statement that Dr. Le's restrictions were included in the RFC constitutes error necessitating remand. See, e.g., Sprinkel v. Berryhill, No. CV 116-182, 2017 WL 4172501, at *5 (S.D. Ga. Aug. 28, 2017) (unpublished report and recommendation) (concluding remand was necessary because, among other things, "[t]here is no explanation for affording 'great weight' to the opinions of [two doctors] that Plaintiff had several mild mental limitations, yet failing to include any mental restrictions in the RFC"), adopted, 2017 WL 4125273, at *1 (S.D. Ga. Sept. 18, 2017) (unpublished order). Having assigned Dr. Le's opinion great weight, the Administration on remand shall incorporate all of Dr. Le's restrictions in the RFC.

### 2. Dr. Patel (Plaintiff's treating physician)

The administrative transcript contains treatment notes and reports authored by Dr. Patel and others at Palm Harbor Family Practice dating back to at least 2011. See Tr. at 349-68, 504-531. At issue here, Dr. Patel rendered an opinion on July 23, 2014 about Plaintiff's functioning, Tr. at 519-21, and another opinion on July 13, 2015 about Plaintiff's functioning, Tr. at 526-31. Regarding these opinions, the ALJ wrote:

> The undersigned gives little weight to the opinion of disability offered by [Plaintiff's] treating physician Ramesh A. Patel, M.D. Specifically, on July 23, 2014 and again on July 13, 2015, Dr. Ramesh [sic] opined [Plaintiff] is unable to work because he is limited to performing no more than sedentary work tasks, requires the use of a cane to ambulate, and must avoid pushing and pulling and use of arm and foot controls. Dr. Ramesh [sic] also opined [Plaintiff] can otherwise perform occasional postural motions, he is limited to only occasional use of his hands, and he will likely miss work at least once every three months due to periodic flare ups and the need for treatment of his chronic back pain and diabetes. However, as noted [previously in the Decision, Plaintiff] did not require the use of an assistive device and he demonstrated grossly intact fine and gross manipulation upon exam despite his pain complaints and reports of neuropathy. There also are no electrodiagnostic findings, nerve conduction studies, or other objective evidence to support a diagnosis of neuropathy. Absent such findings, it appears that Dr. Patel heavily relied on [Plaintiff's]

-11-

subjective complaints in issuing his medical opinion. As such, the undersigned concludes Dr. Patel's opinion has limited probative value.

Tr. at 15-16.

Plaintiff argues that the ALJ failed to provide the requisite good cause for discounting Dr. Patel's opinion. Pl.'s Mem. at 16-22. According to Plaintiff, Dr. Patel "expressly stated that his opinions were supported by an abnormal MRI," which undercuts the ALJ's finding that Dr. Patel heavily on Plaintiff's subjective complaints. Id. at 19 (citations omitted). Plaintiff also points out that Dr. Patel's diagnosis is consistent with that of Matthew Dorman, M.D., who also diagnosed neuropathy without requiring electrodignostic findings, studies, or other similar evidence. Id. Finally, Plaintiff argues that "[t]he ALJ's observations regarding an assistive device, fine and gross manipulation, and lack of objective test findings regarding neuropathy do not justify giving little weight to all of Dr. Patel's opinions," noting that "many of which do not relate to these factors." Id. at 21 (citation omitted). Responding, Defendant contends that "[t]he record—both Dr. Patel's own treatment records and the record as a whole—does not support the severe restrictions assessed by Dr. Patel." Def.'s Mem. at 10-11.

In discounting Dr. Patel's opinions, the ALJ focused on the diagnosis of neuropathy, concluding that there is no objective evidence to support the diagnosis. See Tr. at 16. Dr. Patel's opinions regarding Plaintiff's functional ability, however, are not based solely—or even heavily—on the neuropathy diagnosis. Indeed, Dr. Patel in the July 2014 opinion noted relevant facts and diagnoses of "[right] neck abscess," "uncontrolled diabetes," "back pain severe," and decreased "eye sight." Tr. at 519. In the July 2015 opinion, Dr. Patel noted more than once that there was an "abnormal MRI" showing "DJD" (believed to stand for

degenerative joint disease) and "disc bulge" and that Plaintiff had pain and tenderness in the calves and back, and decreased range of motion in the back due to radiculopathy. Tr. at 527-28. So, in addition to there being more diagnoses than the neuropathy upon which Dr. Patel based his functional limitations, the limitations were supported in part by objective evidence (an abnormal MRI). To the extent the ALJ found otherwise, the findings are not supported by substantial evidence. Remand for reevaluation of Dr. Patel's opinions is required.

## B. GAF score and Mental Symptoms

"[T]he Commissioner has declined to endorse the GAF scale for 'use in the Social Security and SSI disability programs.'" Wind v. Barnhart, 133 F. App'x 684, 692 n.5 (11th Cir. 2005) (unpublished) (quoting Revised Medical Criteria for Evaluating Mental Disorders and Traumatic Brain Injury, 65 FR 50746-01, 2000 WL 1173632 (Aug. 21, 2000)); see also Wilson v. Astrue, 653 F. Supp. 2d 1282, 1293 (M.D. Fla. 2009). As a result of the Commissioner's refusal to endorse the GAF scale, and due to the subjectivity of the determination involved in assigning the GAF score, courts appropriately assign GAF scores limited weight when reviewing an ALJ's RFC determination. Indeed, as this Court has noted, "A GAF score has no direct correlation to social security disability regulations." Robinson v. Colvin, No. 8:14-CV-1533-T-TGW, 2015 WL 12856784, at *4 (M.D. Fla. Aug. 17, 2015); see also Gasaway v. Astrue, No. 8:06-cv-1869-T-TGW, 2008 WL 585113, at *4 (M.D. Fla. Mar. 3, 2008) (citing DeBoard v. Comm'r Soc. Sec., 211 F. App'x 411, 415-16 (6th Cir. 2006)) (stating that "[r]eliance upon a GAF score is of questionable value in determining an individual's mental functional capacity").

Here, the ALJ recognized that Plaintiff had been "hospitalized involuntarily from January 10, 2015 to January 13, 2015 due to suicidal threats, [but Plaintiff] denied a mental health history and signs of depression, mania, and psychosis." Tr. at 16. The ALJ wrote the following regarding the GAF score assigned by the providers where Plaintiff had been hospitalized:

> Prior to discharge, doctors diagnosed [Plaintiff] with depression not otherwise specified (NOS) as well as adjustment disorder with disturbance of mood and conduct. Doctors also assigned [Plaintiff] a [GAF] score of 50. Although this score reflects "serious" psychiatric symptoms, it is only one point less than the GAF range for "moderate" deficits. Furthermore, doctors did not prescribe [Plaintiff] any psychotropic medications or recommend ongoing therapy or inpatient psychiatric care after [Plaintiff's] discharge.
>
> . . .
>
> The undersigned gives the 2015 GAF score great weight because it is consistent with the evidence of record available at the time and it accounts for [Plaintiff's] enraged behavior after an intense argument. However, since that time, [Plaintiff] has not had additional psychiatric hospitalization, in-patient care, or other ongoing mental health treatment other than medication management. [Plaintiff] also did not assert a disabling mental impairment during his recent disability hearing, and [Plaintiff] noted that he generally gets along with others outside of his adult children and he can remember to take his medications without reminders from his wife. Collectively, the evidence demonstrates [Plaintiff] can maintain at least some appropriate social interactions and adequate cognitive functioning despite his mental impairments.

Tr. at 16 (citations omitted).

Plaintiff argues the ALJ erred in assigning the GAF score great weight but failing to adequately account for the serious symptoms associated with it in the RFC. Pl.'s Mem. at 14-15. Responding, Defendant contends that the ALJ adequately accounted for Plaintiff's mental limitations. Def.'s Mem. at 7.

The undersigned finds that the ALJ did not err with respect to the GAF score. As the ALJ noted, the score was "consistent with the evidence of record available at the time." Tr. at 16. The ALJ also provided other reasons, supported by substantial evidence, why Plaintiff is able to maintain appropriate social interactions and functioning. Tr. at 16. The ALJ was not required to include more than the stated mental limitations in the RFC.

## V. Conclusion

After due consideration, reversal and remand is required regarding the medical opinions on Plaintiff's physical limitations.[9] However, the ALJ did not err with respect to Plaintiff's mental limitations. It is therefore

**ORDERED**:

1. The Clerk of Court is directed to enter judgment pursuant to sentence four of 42 U.S.C. § 405(g), **REVERSING** the Commissioner's final decision and **REMANDING** this matter with the following instructions:

---

[9] Plaintiff requests reversal with a direction that benefits be granted, or alternatively, reversal with remand. Pl.'s Mem. at 23. Although generally cases are remanded to the Commissioner for further proceedings, it may be appropriate to remand only for an award of disability benefits when the Commissioner "has already considered the essential evidence and it is clear that the cumulative effect of the evidence establishes disability without any doubt." Davis v. Shalala, 985 F.2d 528, 534 (11th Cir. 1993) (citing Bowen v. Heckler, 748 F.2d 629, 635-36 (11th Cir. 1984)). In other words, "where there is no need for the ALJ to take additional evidence, or to complete the sequential evaluation, and where substantial evidence exists in the record to support a finding of disability, the Court may properly reverse and remand for an award of benefits." Richardson v. Apfel, 44 F. Supp. 2d 1264, 1268 (M.D. Fla. 1998) (citing Andler v. Chater, 100 F.3d 1389, 1394 (8th Cir. 1996)) (footnotes omitted). Here, resolving the errors (and potentially Plaintiff's other contentions in this appeal) requires further consideration and explanation by the ALJ. It may also require additional evidence. Without such information, directing a disability finding based on the record would be inappropriate. Remand is needed for additional administrative proceedings.

(A) Reconsider the opinions of Dr. Le and Dr. Patel and, absent reasons supported by substantial evidence for discounting the opinions, include their stated limitations in the RFC;

(B) Ensure that the other issues raised in this appeal related to Plaintiff's physical impairments are appropriately addressed, if necessary; and

(C) Take such other action as may be necessary to resolve this claim properly.

2. The Clerk is further directed to close the file.

3. In the event benefits are awarded on remand, any § 406(b) or § 1383(d)(2) fee application shall be filed within the parameters set forth by the Order entered in Case No. 6:12-mc-124-Orl-22 (In Re: Procedures for Applying for Attorney's Fees Under 42 U.S.C. §§ 406(b) and 1383(d)(2)).

**DONE AND ORDERED** at Jacksonville, Florida on September 27, 2018.

*/s/ James R. Klindt*
JAMES R. KLINDT
United States Magistrate Judge

kaw
Copies to:
Counsel of record